UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| COMMONWEALTH OF MASSACHUSETTS,<br><br>　　　　　　　　　　　　Plaintiff,<br><br>v.<br><br>ALL STEEL FABRICATING, INC.,<br><br>　　　　　　　　　　　　Defendant. | Case No.<br><br>**COMPLAINT** |

**INTRODUCTION**

1. Defendant All Steel Fabricating, Inc. ("All Steel") operates a fabricated metal products manufacturing facility at 84 Creeper Hill Road, North Grafton, Massachusetts (the "Facility"). All Steel has been discharging industrial stormwater from the Facility that contains pollutants picked up at the Facility into Flint Pond, a waterbody that is adjacent to and shares a continuous surface water connection with the Quinsigamond River.

2. All Steel has never applied for nor received a federal industrial stormwater discharge permit ("Stormwater Permit") for its stormwater discharges, as required by the federal Clean Water Act. 33 U.S.C. §§ 1251-1387 (the "Clean Water Act" or the "Act"), and All Steel is not properly monitoring and controlling these discharges as required by the Act.

3. All Steel's discharges of stormwater to Flint Pond are in violation of the Clean Water Act. The Commonwealth of Massachusetts brings this civil suit to enforce the requirements of the Act. The Commonwealth seeks injunctive relief, civil penalties, reasonable costs including

1

attorney fees, and other relief the Court deems appropriate to redress All Steel's illegal stormwater discharges.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over the parties and the subject matter of this action pursuant to Section 505(a)(1)(A) of the Act, 33 U.S.C. § 1365(a)(1)(A), and 28 U.S.C. § 1331 (an action arising under the laws of the United States).

5. On December 4, 2023, the Commonwealth provided notice of All Steel's violations of the Clean Water Act, and of its intention to file suit against All Steel (the "Notice Letter"), to the Administrator of the United States Environmental Protection Agency ("EPA"); the Administrator of EPA Region 1; the Commissioner of the Massachusetts Department of Environmental Protection ("MassDEP"); and to All Steel, as required by the Act, 33 U.S.C. § 1365(b)(1)(A).

6. More than sixty days have passed since notice was served.

7. This action is not barred by any prior state or federal enforcement action addressing the violations alleged in this Complaint.

8. The Commonwealth has an interest in protecting for itself and its residents the integrity of the Massachusetts environment including its waters, and the related health, safety, economic, recreational, aesthetic, and environmental interests those waters provide. Polluted stormwater is the leading cause of water quality impairment in Massachusetts.

9. The Commonwealth has an interest in obtaining timely and accurate information concerning pollutant discharges into the Commonwealth's waters, as is required by the Act.

10. The interests of the Commonwealth have been, are being, and will continue to be adversely affected by All Steel's failure to comply with the Clean Water Act as alleged in this

Complaint. All Steel's violations threaten water quality in the Commonwealth and deprive the Commonwealth of essential information concerning water quality. All Steel's continuing acts and omissions, as alleged in this Complaint, will irreparably harm the Commonwealth, for which harm it has no plain, speedy, or adequate remedy at law. The requested relief will redress the harms to the Commonwealth caused by All Steel's activities.

11. Venue is proper in the District Court of Massachusetts pursuant to Section 505(c)(1) of the Act, 33 U.S.C. § 1365(c)(1), because the source of the violations is located within this judicial district.

## PARTIES

12. Plaintiff is the Commonwealth, appearing by and through the Attorney General.

13. The Attorney General is the chief law officer of the Commonwealth, with an office at One Ashburton Place, Boston, Massachusetts. She is authorized to bring this action and to seek the requested relief under M.G.L. c. 12, §§ 3 and 11D.

14. All Steel is a domestic profit corporation that lists its principal address as 84 Creeper Hill Road, North Grafton, Massachusetts, 01536.

## STATUTORY BACKGROUND

### Federal Clean Water Act Requirements

15. The Clean Water Act makes the discharge of pollution into waters of the United States unlawful unless the discharge follows certain statutory requirements, including the requirement that the discharge be permitted by EPA under the National Pollutant Discharge Elimination System ("NPDES"). *See* Sections 301(a), 402(a) and 402(p) of the Act, 33 U.S.C. §§ 1311(a), 1342(a) and 1342(p).

16. During every rain or snowmelt event, runoff flows over the land surface, picking up potential pollutants such as sediment, organic matter, nutrients, metals, and petroleum by-products. Polluted stormwater runoff can be harmful to plants, animals, and people.

17. To minimize polluted stormwater discharges from industrial facilities, EPA has issued the general industrial Stormwater Permit under the NPDES program. EPA first issued the Stormwater Permit in 1995 and reissued the permit in 2000, 2008, 2015, and 2021. *See* 60 Fed. Reg. 50,804 (Sept. 29, 1995); 65 Fed. Reg. 64,746 (Oct. 30, 2000); 73 Fed. Reg. 56,572 (Sept. 29, 2008); 80 Fed. Reg. 34,403 (June 16, 2015); 86 Fed. Reg. 10,269 (Feb. 19, 2021). Citations herein are to the 2021 Stormwater Permit, which is the same for all relevant purposes as the 2015 version.

18. Owners and operators of fabricated metal manufacturing facilities that discharge industrial stormwater to waters of the United States are subject to the requirements of this Stormwater Permit. Stormwater Permit, Appendix D, pg. D-6.

19. The Stormwater Permit requires the Facility to, among other things:

   a) prepare a stormwater pollution prevention plan ("SWPPP"), Stormwater Permit, Sections 6 (pgs. 55-64); 8.AA.3.1 (pg. 203) (fabricated metal products);

   b) submit to EPA a Notice of Intent ("NOI") to be covered by the Stormwater Permit, Stormwater Permit, Section 1.3 (pgs. 12-13) and Appendix G;

   c) select, design, install, and implement pollutant control measures that minimize pollutants in stormwater discharges, Stormwater Permit, Sections 2 (pgs. 17-26); 8.AA.2 (pgs. 202-03) (fabricated metal products);

   d) collect and analyze stormwater samples and document monitoring procedures for monitoring requirements that apply to the Facility, Stormwater Permit, Section 4

(pgs. 31-45), including, among other things, quarterly benchmark monitoring for: total recoverable aluminum, total recoverable zinc, and nitrate plus nitrite nitrogen, Stormwater Permit, Sections 4 and 8.AA.6 (pg. 204) (fabricated metal products);

e) conduct and document routine inspections and quarterly visual assessments of the Facility to, among other things, sample and assess the quality of the Facility's stormwater discharges, and ensure that stormwater control measures required by the permit are functioning and are adequate to minimize pollutant discharge, Stormwater Permit, Sections 3 (pgs. 27-30); 8.AA.4 (pg. 203) (fabricated metal products);

f) conduct and document corrective actions and additional implementation measures within mandatory timelines to expeditiously eliminate excessive stormwater pollution whenever required by the permit, Stormwater Permit, Section 5 (pgs. 45-55); and

g) timely prepare and submit to EPA all required documents and reports, including but not limited to discharge monitoring reports and annual reports that include findings from the Facility's inspections and visual assessments and the documentation of corrective actions, Stormwater Permit, Section 7 (pgs. 64-70).

### Citizen Suit Provision of the Clean Water Act

20.     Section 505(a)(1) of the Act authorizes citizen enforcement actions by any "person" against any "person," including individuals, corporations, or partnerships, for violations of NPDES permit requirements and for unpermitted discharges of pollutants. 33 U.S.C. §§ 1365(a)(1) and (f), 1362(5).

21.     The Commonwealth is a "citizen" within the meaning of Section 505(g) of the Act, because it is a "person" having an interest which is or may be adversely affected by industrial stormwater pollution discharges. See 33 U.S.C. § 1365(g), 1362(5).

22.     Under Section 505 of the Act, this Court has authority to enjoin All Steel's violations of the Act's prohibition on unauthorized discharges of pollutants and to require All Steel to comply with the Stormwater Permit. The Court also has authority to impose penalties of up to $66,712 per day for each of All Steel's prior violations. *See* 33 U.S.C. §§ 1365(a), 1319(d); 40 C.F.R. § 19.4; 88 Fed. Reg. 89,309 (Dec. 27, 2023).

## STATEMENT OF FACTS

### Description of All Steel's Activities

23.     All Steel performs a variety of fabricated metal products manufacturing activities at the Facility, including precision metal forming, bending, cutting, welding, blasting, and coating.

24.     The Facility, which is comprised of approximately three (3) acres, is immediately adjacent to Flint Pond, a waterbody connected to the Quinsigamond River.

25.     As part of its activities, All Steel stores metal materials, trailers, dumpsters, vehicles, and other industrial equipment (collectively, "Industrial Equipment and Materials") outdoors at the Facility.

### All Steel's Discharges of Pollutants from the Facility

26.     During every rain or snowmelt event, runoff flows over the Industrial Equipment and Materials and the surface at the Facility, picking up pollutants.

27.     For at least the last five years, during rain events exceeding 0.5 inches, All Steel has discharged polluted stormwater from the Facility into Flint Pond.

28.     The following figure, taken from MassDEP's Wetland and Wetland Change Areas Map, has been annotated by the Attorney General's Office to depict the location of the Facility in relation to Flint Pond. The figure also depicts the direction of stormwater flow from the Facility into Flint Pond.



29.     Flint Pond, which is adjacent to and shares a continuous surface water connection with the Quinsigamond River, contains Core and Priority Habitat for Vasey's Pondweed (*Potamogeton vaseyi*), which is state-listed as Endangered. The Quinsigamond River is used for recreational activities such as fishing and paddling.

### Potential Impacts from Pollutants in All Steel's Stormwater Discharges

30.     Stormwater discharged from fabricated metal products manufacturing facilities is likely to contain numerous pollutants. The Stormwater Permit requires such facilities to conduct quarterly benchmark monitoring for total recoverable aluminum, total recoverable zinc, and nitrate plus nitrite nitrogen to ensure that the Facility's stormwater control measures are effective and minimize pollutant discharges.

31. Elevated levels of aluminum can affect some species' ability to regulate ions, like sodium and chloride, and can inhibit respiratory functions, like breathing. Aluminum can accumulate on the surface of a fish's gill, leading to respiratory dysfunction, and possibly death.

32. Excess levels of zinc cause adverse effects to aquatic organisms, which are much more sensitive to zinc concentrations in water than humans are. At acutely toxic concentrations it is thought that zinc kills fish by destroying gill tissues. At chronically toxic levels zinc is thought to induce stress resulting in fish death. Excessive levels of zinc can alter soil and aquatic microbial diversity and can thus affect the bioavailability and absorption of other metals as well.

33. Nitrates are a form of nitrogen, which is found in several different forms in terrestrial and aquatic ecosystems. These forms of nitrogen include ammonia ($NH_3$), nitrates ($NO_3$), and nitrites ($NO_2$). Nitrates are essential plant nutrients, but in excess amounts they can cause significant water quality problems. Together with phosphorus, nitrates in excess amounts can accelerate eutrophication, causing dramatic increases in aquatic plant growth and changes in the types of plants and animals that live in the waterbody. This, in turn, affects dissolved oxygen, temperature, and other indicators. Excess nitrates can cause hypoxia (low levels of dissolved oxygen) and can become toxic to warm-blooded animals at higher concentrations under certain conditions.

**All Steel's Failure to Comply with the Requirements of the Stormwater Permit**

34. Based on the fabricated metal products manufacturing activities that All Steel conducts at the Facility as set forth above, the Facility is subject to the requirements of the Stormwater Permit.

35. All Steel has not applied for or obtained a Stormwater Permit for its operations at the Facility.

36. All Steel has not complied with the terms of the Stormwater Permit. In particular, All Steel has failed to:

   a. prepare a SWPPP for the Facility (violation of Sections 6 and 8.AA.3.1 of the Stormwater Permit);

   b. submit an NOI for the Facility (violation of Section 1.3.2 of the Stormwater Permit);

   c. select, design, install, and implement pollutant control measures that minimize pollutants in stormwater discharges (violation of Sections 2 and 8.AA.2 of the Stormwater Permit);

   d. collect and analyze stormwater samples and document monitoring procedures for monitoring requirements that apply to the Facility, including quarterly benchmark monitoring for total recoverable aluminum, total recoverable zinc, and nitrate plus nitrite nitrogen, Stormwater Permit, Sections 4 and 8.AA.6);

   e. conduct and document routine Facility inspections and quarterly visual assessments to, among other things, sample and assess the quality of the Facility's stormwater discharges; ensure that stormwater control measures required by the permit are functioning correctly and are adequate to minimize pollutant discharges; and ensure timely corrective actions are taken when they are not (violation of Sections 3 and 8.AA.4 of the Stormwater Permit);

   f. conduct and document corrective actions and additional implementation measures within mandatory timelines to expeditiously eliminate excessive stormwater pollution whenever required by the permit (violation of Section 5 of the Stormwater Permit); and

g. timely prepare and submit to EPA all documents and reports, including but not limited to discharge monitoring reports and annual reports that include findings from the Facility inspections and visual assessments and the documentation of corrective actions (violation of Section 7 of the Stormwater Permit).

## FIRST CAUSE OF ACTION

**Discharges of Industrial Stormwater Without a Federal Stormwater Permit: Violations of Section 301(a) of the Federal Clean Water Act, 33 U.S.C. § 1311(a)**

37. The Commonwealth realleges and incorporates by reference the allegations contained in the above paragraphs.

38. All Steel is a "person" within the meaning of Section 502(5) of the Clean Water Act, 33 U.S.C. § 1362(5).

39. Flint Pond is a "navigable water" within the meaning of Section 502(7) of the Clean Water Act, 33 U.S.C. § 1362(7).

40. By discharging industrial stormwater from the Facility without a Stormwater Permit into Flint Pond, All Steel has violated and continues to violate Section 301(a) of the Act, 33 U.S.C. § 1311(a).

41. Each day that All Steel discharged industrial stormwater from the Facility into the Flint Pond without a Stormwater Permit is a separate and distinct violation of Section 301(a) of the Act, 33 U.S.C. § 1311(a), for each day on which the violation occurred and/or continued. *See also* Sections 505(a)(1) and (f), 33 U.S.C. §§1365(a)(1) and (f).

42. These violations establish an ongoing pattern of failure to comply with the Act's requirements.

## SECOND CAUSE OF ACTION

### Noncompliance with the Federal Stormwater Permit:
### Violations of Section 301(a) of the Federal Clean Water Act, 33 U.S.C. § 1311(a)

43.  The Commonwealth realleges and incorporates by reference the allegations contained in the above paragraphs.

44.  All Steel has violated and continues to violate the Stormwater Permit by failing to implement its requirements, as set forth in paragraph 19, above.

45.  Each of All Steel's violations of each of the requirements set forth in paragraph 19, above, is a separate and distinct violation of Section 301(a) of the Act, 33 U.S.C. § 1311(a), for each day on which the violation occurred and/or continued. *See also* Sections 505(a)(1) and (f), 33 U.S.C. §§ 1365(a)(1) and (f).

46.  These violations establish an ongoing pattern of violations with the Stormwater Permit's requirements.

## RELIEF REQUESTED

WHEREFORE, the Commonwealth respectfully requests that this Court grant the following relief:

1.  Require All Steel to obtain and comply with EPA's federal Stormwater Permit and to cease operations until it has obtained and complied with the Stormwater Permit;

2.  Order All Steel to pay civil penalties of up to $66,712 per day for each of its prior violations. *See* 33 U.S.C. §§ 1311(a); 1365(a); 1319(d); 40 C.F.R. § 19.4; 88 Fed. Reg. 89,309 (Dec. 27, 2023);

3.  Order All Steel to take appropriate actions to restore the quality of waterways subjected to impairment from their unlawful activities;

    4.        Award the Commonwealth's costs (including reasonable investigative, attorney, witness, and consultant fees) as authorized by the Act, 33 U.S.C. § 1365(d); and

    5.        Award any other and further relief as this Court may deem appropriate.

Dated:

        Respectfully submitted,

        COMMONWEALTH OF MASSACHUSETTS

        By its attorney,

        ANDREA JOY CAMPBELL
        ATTORNEY GENERAL

        _____
        Helen D. Yurchenco, (Bar No. 712235)
        Assistant Attorney General
        Environmental Protection Division
        Office of the Attorney General
        One Ashburton Place, 18th Floor
        Boston, MA 02108
        Tel: 617-963-2207
        helen.yurchenco@mass.gov